**MID–SOUTH ELECTRIC COOPERA-TIVE ASSOCIATION et al., Appellants,**

v.

**John F. COLE et ux., Appellees.**

**No. 5856.**

Court of Civil Appeals of Texas, Waco.

Feb. 23, 1978.

R. Coke Mills, Segrest, Mills, Cameron & Riley, Waco, for appellants.

Lloyd C. Martin, Smither, Martin & Haggard, Huntsville, for appellees.

HALL, Justice.

John F. Cole and wife brought this suit in Walker County against Mid-South Electric Cooperative Association and its general manager, Curtis F. Maynard, in two counts. In the first count plaintiffs alleged they have been receiving electrical energy for their home from Mid-South in excess of five years; that Gulf States Utilities Company also provides electrical service in the same area of plaintiffs' home to others; that plaintiffs learned that Mid-South's rate is higher than the rate charged by Gulf States; that Gulf States refused to serve plaintiffs unless they were released as a customer by Mid-South; that Mid-South and Maynard, "acting jointly and in concert with each other, arbitrarily, capriciously, oppressively, and monopolistically" refused to release plaintiffs; that they have thereby suffered particularized actual damages; and that they should also be awarded exemplary damages. The second count in plaintiffs' petition was pleaded as a class action on behalf of plaintiffs and all others receiving electrical energy from Mid-South. It was alleged that although Mid-South was a non-profit corporation created under the provisions of Article 1528b, Vernon's Tex. Civ.St., enjoying certain preferential treatment and financial advantages at public expense, Mid-South was unjustifiably charging rates for electrical service "substantially in excess" of rates charged by public utilities companies serving the area; that "prior to the establishment of the Public Utility Commission of Texas there was no regulatory agency within the State of Texas, and, the members of this class have had no adequate remedy at law and [therefore seek an equitable accounting] of all funds had and received by Mid-South prior to the date upon which the Public Utility Commission would be deemed to have acquired exclusive jurisdiction over this matter"; that the class members are particularly entitled to an accounting of all expenditures in the nature of "miscellaneous" which may have been expended for "non-essential advertising, public relations, and political purposes"; and that if the accounting shows a misuse or misapplication of Mid-South income, then such amount should be recovered from Maynard individually.

Mid-South and Maynard filed pleas of privilege to have the cause transferred to Grimes County, the county of their residences. Mid-South's plea was controverted by plaintiffs under the provisions of subdivision 23 of the venue statute (Article 1995, Vernon's Ann.Tex.Civ.St.), and Maynard's plea was controverted under the provisions of subdivision 29a of the statute.

Subject to their pleas of privilege, defendants also sought dismissal of plaintiffs' suit on the ground that the court was without jurisdiction. In support of this plea, defendants asserted in effect that plaintiffs' suit was concerned only with electrical rates and electrical services and that under certain provisions of the Public Utility Regulatory Act of Texas, Article 1446c et seq., Vernon's Ann.Tex.Civ.St., exclusive original jurisdiction to determine plaintiffs' complaints was vested in the Public Utility Commission of the State of Texas.

After a hearing without a jury defendants' plea to the jurisdiction and the pleas of privilege were overruled. Defendants appeal.

The Public Utility Regulatory Act, Article 1446c, Vernon's Ann.Tex.Civ.St. became effective September 1, 1976. The stated purpose for this enactment set forth in § 2 was "to protect the public interest inherent in the rates and services of public utilities . . . [which] are by definition monopolies in the areas they serve," . . . and "to assure rates, operations, and services which are just and reasonable to the consumers and to the utilities." Comprehensive measures were then set forth in the Act for the future regulation of operations, rates and services of all public utilities, including electric cooperative corporations like Mid-South, and a commission denominated "Public Utility Commission of Texas" was created to effect compliance with those regulatory measures.

It is provided in § 17(e) of the Act that the Commission shall have exclusive original jurisdiction over electric rates, operations and services not within the incorporated limits of a municipality. The record before us shows without dispute that plaintiffs' home (where they are serviced by Mid-South) is not within the limits of any municipality. The asserted "refusal of release" by Mid-South upon which plaintiffs ground this action occurred in January or February, 1976. This suit was filed on February 25, 1977. Defendants argue that because plaintiffs' suit is a controversy over rates and services provided by Mid-South and Gulf States outside the limits of any city, and because the Public Utility Regulatory Act became effective on September 1, 1976, exclusive original jurisdiction of this suit was and is vested in the Public Utility Commission under § 17(e) of the Act, and the court erred in overruling its plea to the jurisdiction. This contention is overruled. It was expressly set forth in § 87(b) of the Act that the Commission "shall assume jurisdiction over rates and service of public utilities on September 1, 1976." In the light of this statute we believe defendants could have complied with plaintiffs' request prior to September 1, 1976, without the Commission's approval if they had chosen to do so. Doubtless, defendants cannot presently do so without the Commission's approval, but plaintiffs do not seek the release, now. They pray only for any damages resulting from defendants' failure to give the release when defendants could have done so. Plaintiffs' suit for damages is not based upon contentions that Mid-South's rate was unjust or illegal. They simply assert that they found a supplier with a lower rate; that they needed a release from Mid-South before they could, in their words, "walk across the street" and buy for less; and that defendants arbitrarily refused them that release. In the class action it is charged that Mid-South's rate was unjust, but an accounting on this question is sought only to the time that the Commission assumed jurisdiction over the rate. These actions and the particular relief sought in each do not raise questions within the exclusive original jurisdiction of the Public Utility Commission. They were properly filed originally in the courts. The order overruling the plea to the jurisdiction is affirmed.

As we have said, subdivisions 23 and 29a of Article 1995 are invoked against Mid-South and Maynard respectively by plaintiffs to maintain venue in the county of suit. In its pertinent parts, subdivision 23 provides that suits against a private corporation may be brought in the county "in which the cause of action or part thereof arose." Subdivision 29a provides that if a suit with two or more defendants may be maintained under the provisions of the venue statute in the county where filed against any one of the defendants, then it may also be maintained there against any and all necessary parties thereto.

To maintain venue in Walker County under subdivision 23, plaintiffs were required to prove all the facts necessary to show a cause of action. *Victoria Bank & Trust Co. v. Monteith*, 138 Tex. 216, 158 S.W.2d 63, 67 (1941). No evidence was introduced on the trial in support of plaintiffs' pleaded class action for an accounting.

Plaintiffs' action for damages set forth in the first count of their petition was based upon the asserted arbitrary refusal of defendants to execute a "release" so plaintiffs could seek electrical service from Gulf States. To establish a cause of action under this count plaintiffs were required to prove "at least a right and a breach by the defendant[s] of a corresponding duty." *Employers Casualty Company v. Clark*, 491 S.W.2d 661, 662 (Tex.Sup.1973). We agree with defendants that plaintiffs failed in this burden. The evidence relating to those venue facts shows only the following: Mid-South and Gulf States had an unwritten agreement that "the one that was serving particular people would continue serving them." Plaintiffs were served by Mid-South. Gulf States also provided electric service in the area where plaintiffs lived. By comparing bills they received from Mid-South with bills friends received from Gulf States, plaintiffs determined that their bills were about one-third higher than their friends' bills. Plaintiffs requested service from Gulf States and were told they would need a release from Mid-South. They contacted Maynard and asked him to write a letter to Gulf States releasing them from service by Mid-South. He refused. Gulf States has never requested the release from Mid-South.

The service agreement between plaintiffs and Mid-South is not a part of the proof. Insofar as the record shows, plaintiffs were free to terminate the contract at will.

These facts do not establish a contractual duty or other legal duty owed to plaintiffs and breached by defendants when Maynard refused to give plaintiffs the requested letter of release.

The order overruling defendants' pleas of privilege is reversed. It appears from the whole record that to the extent possible the issues were fully developed by the parties on the trial. Accordingly, we render judgment transferring this cause to the District Court of Grimes County. See *Jackson v. Hall*, 147 Tex. 245, 214 S.W.2d 458, 459 (1948).